[Cite as *DeFoe v. Schoen Builders, L.L.C.*, 2019-Ohio-2255.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

John DeFoe, et al.

Appellants

v.

Schoen Builders, LLC, et al.

Appellees

Court of Appeals No. WD-18-031

Trial Court No. 2015CV0475

**DECISION AND JUDGMENT**

Decided: June 7, 2019

* * * * *

James P. Sammon, for appellants.

Shannon J. George and John J. McHugh, for appellees.

* * * * *

**SINGER, J.**

{¶ 1} This case is before the court on the appeal of appellants, John DeFoe and Jodie DeFoe, from the February 20, 2018 judgment of the Wood County Court of Common Pleas granting summary judgment to appellees, Schoen Builders, LLC ("SB") and Aaron Schoen ("Schoen"), on most of appellants' claims. For the reasons that follow, we reverse, in part, and affirm, in part, the trial court's judgment.

**Appellants' Assignment of Error**

The Trial Court erred in denying Appellants/Plaintiffs' Motion for
Reconsideration and affirming its decision granting summary judgment to
Defendants/Appellees because there was no genuine issue of material fact
as to Counts I-V and Counts VII-VIII.

**Relevant Background Facts and Procedural History**

{¶ 2} This case involves a dispute between appellants, who are husband and wife,
and appellees, Schoen and SB.

{¶ 3} On January 18, 2013, appellants entered into a Standard Building Contract
("the contract") with SB, for the construction of a custom home ("the home") for
appellants by SB. The contract provided the home would be completed no later than
October 24, 2013, for an all-in price of $623,317. Appellants moved into the home in
April 2014, and paid over $1.3 million for the home.

{¶ 4} On September 1, 2015, appellants filed their complaint. On October 9,
2015, appellants filed a nine-count amended complaint against appellees.[1] In the
amended complaint, appellants alleged: (Count 1) breach of contract against SB; (Count
2) the contract should be rescinded; (Count 3) negligence by SB; (Count 4) breach of
warranty by SB; (Count 5) breach of warranties/breach of duty to perform in a
workmanlike manner by SB; (Count 6) violations of the Consumer Sales Practices Act

---

[1] Additional parties were named in the amended complaint and other claims were alleged,
but those parties and allegations are not before us.

2.

("CSPA") by Schoen; (Count 7) fraudulent misrepresentation by Schoen; (Count 8) fraud against Schoen; and (Count 9) negligent infliction of emotional distress ("NIED") by appellees.

{¶ 5} Appellees filed an answer to the amended complaint as well as counterclaims against appellants. Appellees also filed third-party complaints against numerous parties.[2]

{¶ 6} On June 1, 2017, appellees moved for summary judgment on all counts of the amended complaint. Appellants filed a response on June 27, 2017. On February 20, 2018, the trial court granted summary judgment to appellees on all of the counts except Count 6, CSPA, and Count 9, NIED.

{¶ 7} On February 22, 2018, Schoen filed a motion to dismiss, with prejudice, the CSPA count for lack of standing. Schoen claimed the contract involved a home construction service contract, as defined under R.C. 4722.01, which was not a consumer transaction as defined in R.C. 1345.01(A) of the CSPA.

{¶ 8} On March 6, 2018, appellants filed a reply to the motion to dismiss, which included a motion to amend the complaint to allow appellants to bring actions under R.C. 4722.01 et seq., and a motion for reconsideration of the court's ruling granting summary judgment to appellees on Counts 1 through 5 of the amended complaint.

---

[2] All of these claims were settled, dismissed or otherwise disposed of by appellees, and are not relevant to this appeal.

3.

{¶ 9} On March 15, 2018, the trial court granted Schoen's motion to dismiss the CSPA count, but allowed appellants seven days to file a motion to amend to assert a claim under R.C. Chapter 4722, and denied the motion for reconsideration.

{¶ 10} On March 16, 2018, appellants filed a "Notice of Voluntary Dismissal of Remaining Claims in Amended Complaint," dismissing, without prejudice, Count 9 (NIED) of the amended complaint, and moving the court for an order, pursuant to Civ.R. 54(B), to enter a final judgment on all issues.

{¶ 11} Also on March 16, 2018, appellees filed a notice of voluntary dismissal, without prejudice, of their counterclaims against appellants.

{¶ 12} On April 4, 2018, the court entered a final judgment finding no just reason for delay, as all claims and issues were dismissed or adjudicated. Appellants appealed the February 20, 2018 judgment granting summary judgment to appellees on Counts 1 through 5, 7 and 8 of the amended complaint.[3]

## Final Appealable Order

{¶ 13} Appellees contend appellants did not appeal from a final, appealable order, despite the Civ.R. 54(B) language in the April 4, 2018 final judgment. In support, appellees cite to *Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, ¶ 1, where the Supreme Court of Ohio held:

---

[3] Appellants did not appeal the trial court's March 15, 2018 judgment granting Schoen's motion to dismiss Count 6, the CSPA count.

4.

when a plaintiff has asserted multiple claims against one defendant, and some of those claims have been ruled upon but not converted into a final order through Civ.R. 54(B), the plaintiff may not create a final order by voluntarily dismissing pursuant to Civ.R. 41(A) the remaining claims against the same defendant.

{¶ 14} Courts of appeals have jurisdiction to "affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Ohio Constitution, Article IV, Section 3(B)(2).  Therefore, "an order must be final before it can be reviewed by an appellate court.  If an order is not final, then an appellate court has no jurisdiction." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

{¶ 15} "An order of a court is a final, appealable order only if the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02 are met."  *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus.  When determining whether a judgment is final, the appellate court must engage in a two-step analysis. *Gen. Acc. Ins. Co.* at 21.  First, the court must determine if the order is final within the requirements of R.C. 2505.02.  *Id.*  If the order complies with R.C. 2505.02 and is final, the court must then decide if Civ.R. 54(B) language is necessary.  *Id.*

{¶ 16} R.C. 2505.02(B)(1) provides in relevant part that an order is final if it "affects a substantial right in an action that in effect determines the action and prevents a judgment."  A substantial right is "a right that the United States Constitution, the Ohio

5.

Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect."  R.C. 2505.02(A)(1).  "A court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right." *Chef Italiano* at 88.  A party's right to enforcement and performance of a contract involves a substantial right.  *Niehaus v. Columbus Maennerchor*, 10th Dist. Franklin No. 07AP-1024, 2008-Ohio-4067, ¶ 19.

{¶ 17} Civ.R. 54(B) states "[w]hen more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."

**Analysis**

{¶ 18} The trial court granted summary judgment to appellees on Counts 1 through 5, 7 and 8 of the amended complaint, then granted appellees' motion to dismiss Count 6.  Thereafter, appellants filed a notice of voluntary dismissal of their remaining claim, Count 9, and appellees voluntarily dismissed their counterclaims.  The court then issued a final judgment finding no just reason for delay.  Appellants appealed.

{¶ 19} At the outset, we find appellants' notice of voluntary dismissal of Count 9 of the amended complaint was improper in light of the ruling in *Pattison*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126.  Thus, Count 9 remains pending before the trial court.  *See Ningard v. Shin Etsu Silicones*, 9th Dist. Summit No. 24524, 2009-Ohio-3171, ¶ 6-7.

6.

{¶ 20} As to whether we have jurisdiction to hear this appeal, we find the trial court's February 20, 2018 judgment, granting summary judgment to appellees on Counts 1-5, 7 and 8 of the amended complaint, affected appellants' substantial rights as the judgment deprived them of remedies they would otherwise possess. We therefore find this judgment complies with R.C. 2505.02, and is a final order.

{¶ 21} Next, we must determine if Civ.R. 54(B) applies, and if so, if its requirements were met. In the trial court's April 4, 2018 judgment, the court found "the multiple claims and issues set forth by the parties have been dismissed and/or adjudicated. The Court further finds that there is no just reason for delay." We note Civ.R. 54(B) language is not necessary in a judgment entry to make that order final and appealable when no claims remain pending before the trial court. However, since we determined appellants' dismissal of Count 9 of the amended complaint was improper and that claim remains pending before the trial court, we find Civ.R. 54(B) applies. We further find the trial court's determination that there was no just reason for delay was correct, albeit for the wrong reason. *See Reynolds v. Budzik*, 134 Ohio App.3d 844, 846, 732 N.E.2d 485 (6th Dist.1999), fn. 3, citing *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944) (a decision which achieves the correct result must be followed, even if the wrong reasoning or basis is used to justify the decision). We therefore find the trial court complied with Civ.R. 54(B).

{¶ 22} Accordingly, we conclude there is a final judgment and we have jurisdiction to hear this appeal. *See Foley v. Empire Die Casting Co.*, 9th Dist. Summit

7.

No. 24558, 2009-Ohio-5539, ¶ 4 (although a count of the complaint remained pending, the trial court's judgment included the requisite language pursuant to Civ.R. 54(B) to confer jurisdiction on the appellate court jurisdiction to consider the merits of the appeal); *Rutledge v. Lilley*, 9th Dist. Lorain No. 09CA009691, 2010-Ohio-2275, ¶ 3, fn. 1 (the purported dismissal was ineffective, but because the trial court included Civ.R. 54(B) language in its order, the pending claims do not deprive the appellate court of jurisdiction).

## Appellants' Assignment of Error

{¶ 23} We will first address appellants' assignment of error with respect to the trial court's decision to grant summary judgment to appellees on Counts 1 through 5, 7 and 8 of the amended complaint. Some counts will be analyzed together, and some counts will be reviewed out of order.

## Standard

{¶ 24} We review a summary judgment decision on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Thus, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment. *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980).

{¶ 25} Summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving

8.

party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party. Civ.R. 56; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 26} "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264, (1996). In addition, "summary judgment may be rendered where the pleadings and the arguments of the party seeking summary judgment clearly establish that the nonmoving party has no legally cognizable cause of action." *Id.* at 297-298. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings." Civ.R. 56(E).

### Count 1—Breach of Contract, Count 4—Breach of Warranty

{¶ 27} In Count 1 of the amended complaint, appellants alleged they had a binding agreement with SB which required SB to "perform the work according to the specifications identified" by appellants, and SB failed to meet its contractual obligations.

{¶ 28} In Count 4, appellants alleged they "notified Schoen of the multiple problems with the Construction * * * and indicated that much of the repairs would fall under the warranty issued to them by Schoen Builders." Appellants alleged SB refused

9.

to repair the major items and such refusal is a breach of the warranty issued to appellants by SB.

**Law**

{¶ 29} To constitute a valid contract, there must be a meeting of the minds of the parties, there must be an offer by one party and an acceptance by the other party, and the contract must be supported by consideration. *Mike McGarry & Sons, Inc. v. Constr. Resources One, LLC*, 2018-Ohio-528, 107 N.E.3d 91, ¶ 90 (6th Dist.), citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 442 N.E.2d 1302 (1982). Whether a contract exists is a question of law. *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, 861 N.E.2d 605, ¶ 7 (10th Dist.).

{¶ 30} It is an elementary principle that any law relating to a contract which is in existence at the time of the execution of the contract becomes a part of the contract. *Eastern Mach. Co. v. Peck*, 161 Ohio St. 1, 6-7, 117 N.E.2d 593 (1954). It is also "elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract." *Bell v. N. Ohio Tel. Co.*, 149 Ohio St. 157, 158, 78 N.E.2d 42 (1948).

{¶ 31} "In construing a written instrument, the primary and paramount objective is to ascertain the intent of the parties so as to give effect to that intent." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). The contract must be reviewed as a whole, and it is presumed that the intent of the parties is reflected in the language of the contract. *Id.* Common words appearing in a contract will

10.

be given their ordinary meaning unless manifest absurdity would result, or unless some other meaning is clearly evident from the face or contents of the contract. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. When terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), syllabus. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984).

{¶ 32} The elements of a breach of contract action are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." (Citations omitted.) *Firelands Regional Med. Ctr. v. Jeavons*, 6th Dist. Erie No. E-07-068, 2008-Ohio-5031, ¶ 19.

**Arguments**

{¶ 33} In their motion for summary judgment, appellees argued the contract entered into between appellants and SB included paragraph 5, which is unambiguous, and states:

> 5. Possession. Both Contractor and Owner agree that occupancy shall be given Owner only upon, and not until payment of the total contract price, plus all amounts due Contractor for all changes or additions, have been paid to Contractor as provided for in paragraph 3.

**{¶ 34}** Appellees asserted it was undisputed appellants took possession of the home before making final payment to SB, which triggered paragraph 5 of the contract. They maintained "[a] nearly identical contract term was previously addressed" in *Kott v. Gleneagles Professional Builders & Remodelers, Inc.*, 197 Ohio App.3d 699, 2012-Ohio-287, 968 N.E.2d 593 (6th Dist.), where the court found "[p]ursuant to the plain terms of the parties' contracts, the act of occupancy prior to full payment constitutes acceptance of the property and relieves [the Contractor] of further obligation." *Id.* at ¶ 13. As a result, the contractor was entitled to judgment on the owner's "breach of contract claim as concerns any purported substandard material or workmanship." *Id.* Appellees submitted a similar result should be reached here, as appellants "are barred from bringing a breach of contract claim against SB" and "any claims for breach of warranty are likewise invalid," so appellees were entitled to summary judgment on the breach of contract and breach of warranty claims.

**{¶ 35}** In response, appellants countered the contract language is not clear and unambiguous and the allegation that appellants "obtained 'occupancy' of the residence subject to para. 5 of the contract belies the very facts of this case." Appellants suggested there exists a question of fact as to whether they "at this very moment – maintain legal occupancy of the residence" because appellees failed to obtain anything other than a temporary occupancy permit. Appellants contended any arguments by appellees as to paragraph 5 "are null and void" as the contract terms "have yet to be fulfilled." Appellants further argued they "have provided evidence of a myriad of breaches" by

appellees and "the evidence is clear that [appellees'] construction of the residence contained numerous latent defects."

{¶ 36} Appellants further asserted *Kott* is distinguishable and should not be followed. Appellants argued that at the time they entered into the contract with SB, "the interpretation set forth in *Kott* [was] no longer valid as the requirements of R.C. 4722.01, et seq., * * * now dictate the parameters of a home construction service contract." Appellants contended appellees' proposed action, under paragraph 5, is a violation of R.C. 4722.03(A)(4). Appellants also claimed "[t]he parameters of R.C. 4722.08 allows for this very cause of action to continue against [appellees] and summary judgment to be denied * * * [as] R.C. 4722.08(F) specifically states that 'Nothing in this section shall preclude an owner from proceeding with a cause of action under any theory of law.'"

{¶ 37} In addition, appellants submitted the contract is unconscionable, and "[a]s it relates to the 'effect' that this Court should give [appellants'] moving into the home and then paying the final amount to [appellees]," it is procedurally unconscionable to construe the contract terms to prohibit appellants from bringing a cause of action for latent defects and other issues prior to making final payment. Appellants argued their "situation represents a situation of procedural impossibility on behalf of [appellants]. In April 2014, their home has taken almost six (6) months longer than contracted for and they * * * literally have no place to go." Appellants also maintained the contract terms are not commercially reasonable.

13.

{¶ 38} In reply, appellees asserted the contract was clear and not unconscionable. Appellees argued, with respect to R.C. 4722.03(A)(4), that appellants "failed to identify any violations of R.C. Chapter 4722 in their Amended Complaint but still attempt to rely on the language of the statute to avoid judgment. That notwithstanding, the performance of the contract was not made contingent on [appellants] waiving their right to a warranty for work performed." Appellees further submitted "R.C. 4722.08 outlines remedies available to owners for violations of the statute" and appellants' "conclusion [concerning R.C. 4722.08(F)] misinterprets that statute and does not impact the award of summary judgment" because "the plain meaning * * * reveals * * * common law claims to proceed in addition to any violations of the statute."

**Analysis**

{¶ 39} We must first determine whether a valid, binding contract existed between appellants and SB.

{¶ 40} The record shows appellants alleged, in their amended complaint, they had a binding agreement with SB, and appellants attached a copy of the contract to the amended complaint. Appellees, in their answer to the amended complaint, admitted appellants "entered into a contract for construction of a new residence by [SB], but state that the contract speaks for itself." However, in their response to the motion for summary judgment, appellants asserted, for the first time, that the contract was unconscionable. Unconscionability of a contract is an affirmative defense. *Busch, Inc. v. Bailey Dev. Corp.*, 6th Dist. Lucas No. L-83-297, 1984 Ohio App. LEXIS 9011, at *11 (Feb. 3,

14.

1984).  A party may not rebut a motion for summary judgment by raising a new affirmative defense in its opposition to summary judgment.  *Stanwade Metal Prods. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196, 814 N.E.2d 572, ¶ 22 (11th Dist.).  *See also Mills v. Whitehouse Trucking Co.*, 40 Ohio St.2d 55, 320 N.E.2d 668 (1974), syllabus.  Affirmative defenses, other than those listed in Civ.R. 12(B), are waived if not raised in the pleadings or in an amended pleading.  *Jim's Steak House v. City of Cleveland*, 81 Ohio St.3d 18, 20, 688 N.E.2d 506 (1998).  Since appellants did not set forth the affirmative defense of unconscionability in a pleading, the defense is waived and will not be considered.  We therefore find, based on the evidence in the record, a valid, binding contract existed between appellants and SB.

{¶ 41} Next, we will address appellees' argument that paragraph 5 of the contract is unambiguous and appellants took possession of the home before making final payment.  Appellants countered that a question of fact exists as to whether they obtained occupancy and "maintain legal occupancy of the residence."

{¶ 42} Paragraph 5 provides in relevant part "[b]oth Contractor and Owner agree that occupancy shall be given Owner only upon, and not until payment of the total contract price."  And, "[t]aking possession of the above-described property by the Owner prior to payment in full to the Contractor as aforesaid shall be complete acceptance by the Owner without any further obligation * * * of the Contractor to give the warranty provided for in paragraph 12."

15.

{¶ 43} Upon review, the term "possession" is not defined in the contract, so we look to the common meaning and usage. The dictionary definitions of "possession" include "the act of having or taking into control" and "control or occupancy of property without regard to ownership." Merriam-Webster, https://www.merriam-webster.com/ dictionary/possession (accessed Apr. 1, 2019). We find "possession," as used in the context of paragraph 5, is unambiguous. The issue raised by appellants of whether they obtained occupancy or maintain legal occupancy in the home does not render the term "possession" ambiguous. Thus, when applying the common and ordinary definition of "possession" to the record before us, we find appellants took possession of the home over Easter weekend, in April 2014, when they moved their belongings and children into the home to live. This finding comports with the allegation in appellants' amended complaint that "Schoen turned over possession of the home to [appellants] on April 18, 2014." We further find appellants took possession of the home before they made their final payment to SB on May 9, 2014.

{¶ 44} Last, we will consider appellees' argument that appellants' possession of the home before final payment triggered paragraph 5 of the contract, which entitled appellees to summary judgment on the breach of contract and warranty claims on the authority of *Kott*, 197 Ohio App.3d 699, 2012-Ohio-287, 968 N.E.2d 593. Appellants countered *Kott* was no longer valid because R.C. 4722.01 et seq. applied. Appellants claimed "[t]he very actions proposed by [appellees] in their Motion for Summary Judgment – that their service contract (Para. 5) somehow limits or makes contingent

[appellants'] ability to obtain services for warranty issues once they move into the home would be an express violation of R.C. 4722.[03(A)(4)]."

{¶ 45} In *Kott*, the relevant clause of the contracts stated "[o]ccupancy of the dwelling by the Owners prior to payment in full to the Contractor aforesaid shall constitute complete acceptance by the Owners without any further obligation on the part of the Contractor, except that the Owner and Contractor may agree to earlier occupancy." *Id.* at ¶ 12. The owner moved into the home in October 2007, but did not make the final payment until February 2008. *Id.* at ¶ 13. The court held "[p]ursuant to the plain terms of the parties' contracts, the act of occupancy prior to full payment constitutes acceptance of the property and relieves [the Contractor] of further obligation." *Id.* The court found the contractor was entitled to judgment on the owner's "breach of contract claim as concerns any purported substandard material or workmanship." *Id.*

{¶ 46} R.C. 4722.03(A)(4) provides "[n]o home construction service supplier shall do any of the following: * * * [m]ake the performance of any home construction service contingent upon an owner's waiver of any rights this chapter provides[.]"

{¶ 47} Upon review, *Kott* was decided in January 2012, R.C. Chapter 4722 became effective on August 31, 2012, and the contract was executed on January 18, 2013. We therefore find the applicable provisions of R.C. Chapter 4722 apply to the parties' contract. *See Eastern Mach. Co.*, 161 Ohio St. at 6-7, 117 N.E.2d 593; *Bell*, 149 Ohio St. at 158, 78 N.E.2d 42. However, we find paragraph 5 of the contract does not violate R.C. 4722.03(A)(4), as appellants have not identified any rights, under R.C.

17.

Chapter 4722, that they, as owners, must waive in order for SB, the supplier, to perform a service. Likewise, we find the clause in *Kott* does not violate R.C. 4722.03(A)(4). Thus, we find the holding in *Kott* remains valid.

{¶ 48} In *Kott*, the scope of the relevant clause is very broad ("occupancy * * * prior to payment in full * * * shall constitute complete acceptance by the Owners without any further obligation on the part of the Contractor"), whereas the scope of paragraph 5 of the contract is much more limited ("possession * * * prior to the payment in full * * * shall be complete acceptance by the Owner without any further obligation on the part of the Contractor to give the warranty provided for in paragraph 12."). The warranty in paragraph 12 states in relevant part: "[t]he Contractor shall repair or replace any defective materials in accordance with the procedures outlined in the Toledo Home Builders Standard Warranty." Therefore, we find paragraph 5 of the contract precludes any claim by appellants based on the warranty contained in paragraph 12 of the contract. We note this interpretation of paragraph 5 is much narrower than that advanced by appellees.

{¶ 49} With respect to appellants' contention that R.C. 4722.08 allows their cause of action to continue, R.C. 4722.08 states "[f]or a violation of Chapter 4722. of the Revised Code, an owner has a cause of action and is entitled to relief as follows: * * * (F) [n]othing in this section shall preclude an owner from ALSO proceeding with a cause of action under any theory of law." (Emphasis added.) We find the statute clearly provides an owner with a cause of action for a violation of R.C. Chapter 4722, as well as

18.

a cause of action under any theory of law. We therefore find the language of the statute does not support appellants' interpretation. We further find appellants are not entitled to the relief available under R.C. 4722.08, as they have not pled a cause of action for a violation of R.C. Chapter 4722.

{¶ 50} Accordingly, we find appellees are entitled to summary judgment on appellants' breach of contract claim (Count 1) and breach of warranty claim (Count 4) only to the extent those counts seek the remedies provided for in the warranty in paragraph 12 of the contract, for appellees to repair or replace any defective materials.

### Count 3—Negligence, Count 5—Breach of Warranties

{¶ 51} In Count 3, appellants alleged SB owed them a duty "to perform the Construction with reasonable care and in accordance with generally acceptable construction industry standards." In Count 5, appellants alleged SB owed them a duty "to construct their home in a workmanlike manner."

{¶ 52} In their summary judgment motion, appellees argued paragraph 5 of the contract also warrants summary judgment for them on Counts 3 and 5 as paragraph 5 states appellants "occupying the property prior to final payment constitutes 'complete acceptance' and relieves [SB] of any further obligations to provide a warranty." Appellees asserted the plain language of paragraph 5 releases SB "from any further obligations regarding its workmanship or the requirement to provide any warranty repairs" to appellants. Appellees further argued "any claims for negligent workmanship sound in negligence and must be treated as such. * * * Since [appellants] accepted the

19.

residence in its condition upon moving in as stated in the contract, any claims for negligence are invalid against [appellees]." In support, appellees cited to *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379, 433 N.E.2d 147 (1982).

{¶ 53} Appellants countered the professional engineering report of Larry Fast includes "innumerable examples of the failure of [appellees] to perform to the standards required – i.e., in a workmanlike manner * * * [and] reasonable minds could conclude the implied duty was breached." Appellants cite to numerous cases including *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 754 N.E.2d 785 (2001) and *Seff v. Davis*, 10th Dist. Franklin No. 03AP-159, 2003-Ohio-7029.

**Law**

{¶ 54} The *Velotta* case involved an action by an owner against a builder of an already constructed residence for damages caused by the builder's failure to construct the residence in a workmanlike manner using ordinary care. *Velotta* at paragraph one of the syllabus. By contrast, the court in *Kishmarton* held "[w]here the vendee [owner] and builder-vendor enter into an agreement for the future construction of a residence, the vendee's claim for breach of an implied duty to construct the house in a workmanlike manner arises ex contractu [out of the contract]." *Id.* at paragraph one of the syllabus. "Workmanlike manner is a standard that requires a construction professional to act reasonably and to exercise that degree of care which a member of the construction trade in good standing in that community would exercise under the same or similar circumstances." *Seff* at ¶ 19.

20.

**Analysis**

{¶ 55} Upon review, appellees relied on the language of paragraph 5 of the contract and the holding in *Kott*, in support of their motion for summary judgment on appellants' negligence and breach of warranties claims. We find this reliance inadequate to sustain their burden of establishing that appellants have no legally cognizable claims for negligence or breach of warranties to construct the home in a workmanlike manner. Since appellees failed to prove they were entitled to judgment as a matter of law on these counts, it was not necessary for appellants to offer evidence sufficient to present a genuine issue of material fact, yet appellants did so.

{¶ 56} Accordingly, the trial court erred in granting summary judgment to appellees on Counts 3 and 5 of the amended complaint.

**Count 2—Rescission**

{¶ 57} In Count 2, appellants alleged as a direct and proximate result of Schoen's poor workmanship and breach of contract, the home is not habitable and cannot be used for its intended purpose. Appellants alleged they are entitled to rescind the contract with Schoen.[4]

{¶ 58} In the motion for summary judgment, appellees argued appellants alleged "they are entitled to rescission of the Contract with Schoen Builders." Appellees observed "[t]he sole basis identified by [appellants] for the right to rescind the contract

---

[4] We note appellants entered into the contract with SB, not Schoen.

* * * [are] allegations [that] constitute either a breach of contract claim or a negligence claim for the failure to perform in a workmanlike manner.  Neither of these claims are valid."

**Law**

{¶ 59} Rescission of a contract "'amounts to the unmaking of a contract, an undoing of it from the beginning, and not merely a termination * * *.'  Black[']s Law Dictionary (5 Ed. Rev. 1979), 1174."  *Admiral Holdings, LLC v. Adamany*, 8th Dist. Cuyahoga No. 87870, 2006-Ohio-6945, ¶ 6.  For a court to order the rescission of a contract, the court must conclude a breach exists which is so substantial and fundamental that it goes to the root of the contract.  *Id.*  "Generally, without fraud, duress, undue influence, or mistake, one party to a contract cannot rescind or cancel it without the consent of the other party."  *Id.*

**Analysis**

{¶ 60} Upon review, we find appellees' argument, that they are entitled to summary judgment because appellants' claims for breach of contract and negligence for the failure to perform in a workmanlike manner are not valid, is insufficient to sustain their burden of establishing that appellants have no legally cognizable claim for rescission.  The argument presumes appellants' breach of contract and negligence claims are "not valid," which is not accurate.

{¶ 61} As set forth above, we found the breach of contract claim (Count 1) was "not valid" only to the extent that count seeks the remedies provided for in the warranty

22.

in paragraph 12 of the contract, for appellees to repair or replace any defective materials. Thus, the breach of contract claim remains pending except as it pertains to or seeks the remedies provided in paragraph 12. We also found appellants' negligence claim (Count 3), was "valid" and remains pending because appellees failed to sustain their burden of establishing that appellants have no legally cognizable claim for negligence.

{¶ 62} Since appellees did not meet their burden of demonstrating appellants have no legally cognizable claim for rescission, we find the trial court erred in granting summary judgment to appellees on Count 2 of the amended complaint.

### Count 7—Fraudulent Misrepresentation, Count 8—Fraud

{¶ 63} In Count 7, appellants alleged Schoen made certain representations to them which were material to the contract and the home's construction, were knowingly false or were reckless, were made with the intent to mislead, and were relied upon by appellants.

{¶ 64} In Count 8, appellants alleged Schoen "indicated to a third party contractor that he should charge [appellants] higher amounts on the Project because they had plenty of money and could pay it." Appellants further alleged Schoen advised, promised and deceived them that the material and workmanship of the home "was being done in accordance within the standards of the building industry." Appellants alleged Schoen's false statements and promises "were undertaken as a method to continue to fraudulently receive payment under the building contract."

23.

**Law**

{¶ 65} A claim of fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred, (4) with the intent of misleading another to rely on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991). Whether or not fraud exists is generally a question of fact. *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 84.

**Arguments and Analysis**

{¶ 66} Schoen argued, in the motion for summary judgment, that appellants cannot show they relied on any statements he made for purposes of entering into the contract. Schoen contended appellants' allegations of fraud are based on his representations that: he would have a project manager and a selections coordinator to assist appellants during construction; the home would be built according to appellants' specifications; and, the construction would be of a higher quality than what was delivered. Schoen observed other allegations of fraud alleged by appellants included that: he suggested third-parties charge appellants more for their services; he continued to make false statements during construction to obtain payments from appellants; and his

24.

marketing materials, which indicated he had been in business for 30 years and had customer testimonials, were fraudulent.

{¶ 67} Schoen maintained appellants were unable to show his statements regarding a project manager or selections coordinator were false, and since there was no definition of the role of a project manager or selections coordinator on which appellants could have relied, there could be no fraud.  Schoen also asserted appellants were unable to confirm any of the information in the marketing materials was false.  In support, Schoen cited to appellants' deposition testimony.

{¶ 68} In response, appellants mentioned four examples of fraud in appellees' marketing materials and cited to Schoen's deposition testimony as well as their own testimony in support.  Appellants contended they acted as the project manager, they never had a selections coordinator and Schoen told a painter to overcharge appellants.  In support, appellants cited to their own deposition testimony.

{¶ 69} A review of the record, including all of the deposition transcripts and exhibits, shows questions of fact exist as to whether Schoen committed fraud or made fraudulent misrepresentations as alleged by appellants in Counts 7 and 8 of the amended complaint.  We therefore find genuine issues of material fact remain.

{¶ 70} Accordingly, the trial court erred in granting summary judgment in favor of appellees on Counts 7 and 8 of the amended complaint.

## Conclusion

**{¶ 71}** Appellants' assignment of error, with respect to the trial court's decision to grant summary judgment to appellees, is well-taken as to Counts 2, 3, 5, 7 and 8, and well-taken, in part, as to Counts 1 and 4 of the amended complaint. This determination renders moot appellants' assertion that the trial court erred in denying their motion for reconsideration. *See* App.R. 12(A)(1)(c).

**{¶ 72}** The February 20, 2018 judgment of the Wood County Court of Common Pleas is affirmed, in part, and reversed, in part, and the case is remanded for further proceedings consistent with this decision. Appellants and appellees are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.            _____
                                              JUDGE

Thomas J. Osowik, J.       

Gene A. Zmuda, J.            _____
CONCUR.                                                 JUDGE

_____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.